UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 08-14246-CIV-MOORE/LYNCH

TEXTRON FINANCIAL CORPORATION,

    Plaintiff,

vs.

LENTINE MARINE INC., LOUIS F.
LENTINE, and JULIE A. LENTINE,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Motion for Partial Summary Judgment (dkt # 60).

UPON CONSIDERATION of the Motion, Defendants' Response, Plaintiffs' Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This diversity case arises out of a contract dispute between Plaintiff Textron Financial Corp. ("Textron"), and Defendants Lentine Marine Inc. ("LMI"), Louis F. Lentine, and Julie A. Lentine (collectively, "the Lentines"). Textron is a Delaware commercial finance company. LMI is a Florida corporation in the business of selling boats, boat equipment, and related marine materials and services. Individual Defendants Louis Lentine and Julie Lentine are Florida citizens and the proprietors of LMI.

The Parties' business relationship began in September 2001, when Textron and LMI entered into a Credit and Security Agreement.[1] (Facts, dkt # 49, ¶ g n.1). At that time, Louis Lentine also entered into a Personal Guaranty Agreement with Textron. (Facts, dkt # 49, ¶ i). On November 7, 2006, Textron and LMI entered into a new Credit and Security Agreement ("the Security Agreement"), which superseded the 2001 agreement. (Facts, dkt # 49, ¶ g n.1). Under the Security Agreement, Textron agreed to finance LMI's acquisition of new inventory, with Textron taking a security interest in the inventory. (Facts, dkt # 49, ¶¶ h, l). Textron perfected its security interest by filing the requisite UCC Financing Statement in 2001, and also filed a UCC Financing Continuation and a UCC Financing Amendment in 2006 with the Florida Secretary of State. (Compl. ¶ 51; Compl. Ex. E).

In November 2006 Julie Lentine also entered into a personal guaranty agreement with Textron (together with Louis Lentine's agreement, "the Guaranty Agreements"). (Facts, dkt # 49 ¶ j). Under the terms of the Guaranty Agreements, the Lentines each agreed to act as guarantors for LMI, and to be personally liable in the event that LMI defaulted on any of its obligations to Textron. (Louis Lentine Guaranty Agreement, dkt # 49-4 ¶ 1; Julie Lentine Guaranty Agreement, dkt # 49-5 ¶ 1).

On July 8, 2008, Textron filed a Verified Complaint (dkt #1), alleging that LMI had defaulted under the terms of the Security Agreement, and that LMI had breached the agreement by continuing to sell items of inventory without making payments to Textron. Compl. ¶ 35. Textron accelerated the payment of all debt due under the Security Agreement, and alleged that the total amount due, including interest and costs, exceeded $6.5 million. Compl. ¶¶ 17, 18. Textron's

---

[1] To the extent possible, the factual background is taken from the Summary of Uncontested or Stipulated Facts ("Facts") that the Parties submitted to the Court on November 13, 2008, as part of their Joint Scheduling Report (dkt # 49). The Parties have stipulated that true and correct copies of all the relevant agreements were attached to the Joint Scheduling Report. (Facts, dkt # 49, ¶¶ g, i, j).

Complaint sought (1) a preliminary injunction prohibiting LMI from selling inventory without remitting payment to Textron, (2) money damages for the sums owing under the Security Agreement, (3) repayment from the Lentines in their individual capacities as guarantors pursuant to the Guaranty Agreements, and (4) replevin of the LMI inventory in which Textron had perfected a security interest. On October 27, 2008, Defendants filed an Answer (dkt # 48) broadly denying Plaintiff's allegations.

Following further negotiations by the parties, on September 25, 2008, this Court, upon the consent of Plaintiff and Defendants, issued Writs of Replevin (dkt #'s 42, 43), pursuant to which LMI returned its inventory to Textron. On the same date, and also with the consent of the Parties, this Court entered a Temporary Restraining Order (dkt # 39) prohibiting LMI from selling or otherwise disposing of any of its inventory, and directing LMI to deliver to Textron any proceeds from past or future inventory sales. These consent orders effectively mooted Textron's preliminary injunction and replevin claims. Textron has since repossessed LMI's inventory, and has been able to recoup at least some of LMI's debt by reselling certain items of inventory back to their original manufacturers, and by selling others items through local marine dealers Treasure Coast Boat Center and Legendary Marine, Inc.

Plaintiff filed the instant Motion for Partial Summary Judgment (dkt # 60) on March 3, 2009, seeking the following from Defendants; (1) $843,266.81 for items of inventory sold without remitting payment to Plaintiff; (2) $25,489.50 for costs incurred to repossess LMI's inventory; (3) $916,201.44 for the deficiency between the full cost of the repossessed items and what Plaintiff was able to recover for them at resale; (4) $126,993.28 in unpaid interest, and (5) attorneys' fees and costs.

3

## II. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**III.   ANALYSIS**

   A. Applicability of Florida Law

   On a motion for summary judgment, the materiality of facts is determined with reference to the applicable substantive law. Allen, 121 F.3d at 646. The parties have not briefed the issue of what substantive law applies to this dispute, seemingly assuming that it is Florida law. In diversity suits the substantive law is generally the law of the forum state in which the district court sits. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The issue is not necessarily so simple here, however, because the Security Agreement and the Guaranty Agreements include choice of law provisions specifying that each contract is governed by the law of the State of Rhode Island. (Security Agreement, dkt # 49-3, ¶ 16; Louis Lentine Guaranty Agreement, dkt # 49-4, ¶ 6; Julie Lentine Guaranty Agreement, dkt # 49-5, ¶ 6). The Parties' filings do not refer to the Rhode Island choice of law provisions.

   While it would have been preferable for the parties to brief this issue, or better still, to have expressly stipulated to the substantive law, the Court holds that because neither party disputes whether Florida law controls, and because both Parties' briefs rely exclusively upon Florida law, the choice of law issue has been waived. The Court will accordingly apply Florida law. See Topp, Inc. v. Uniden Am. Corp., 483 F. Supp. 2d. 1187, 1189 (S.D. Fla. 2007) (concluding in contract dispute that, "'because the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum (Florida) controls.'") (quoting Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989)); see also Munnings v. FedEx Ground Package Sys., Inc., No. 6:07-cv-282-Orl-KRS, 2008 WL 1744779, at *3 n.2 (M.D. Fla. April 11,

2008) (applying Florida law to contract claim where parties briefed Florida law exclusively without reference to Pennsylvania choice of law provision); Marine Envtl. Partners, Inc. v. Johnson, 863 So. 2d. 423, 426 (Fla. 4th Dist. Ct. App. 2003) (same).

B. Plaintiff's Substantive Claims

As discussed above, Plaintiff's Complaint originally included five claims. Counts I and V, seeking a preliminary injunction and replevin, respectively, have been resolved through consent orders. Count II was styled as a breach of contract claim seeking recovery from LMI under the Security Agreement; Count III sought recovery from Louis Lentine under his personal guaranty agreement; Count IV,[2] sought recovery from Julie Lentine under her personal guaranty agreement.

Plaintiff seeks recovery for: (i) the amount allegedly owed by LMI for items of inventory sold without repaying Plaintiff; (ii) the amount of deficiency[3] allegedly owed by LMI for items of repossessed inventory resold or to be resold; (iii) costs allegedly incurred by Plaintiff in the course of repossessing LMI's inventory, (iv) the amount of unpaid interest that LMI allegedly owes, and (v) attorneys' fees and costs. As discussed in further detail below, Defendants' Response contests only the issue of whether LMI owes Plaintiff a deficiency, without rebutting the other claims. Therefore, with respect to the remaining issues, if Plaintiff has met its initial burden, summary judgment for Plaintiff on those issues is proper, because Defendants have failed to set out specific facts showing the existence of material facts for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

---

[2] Count IV is mislabeled in the Complaint as "Count VI."
[3] That is, the difference between the amount that Plaintiff paid to finance LMI's acquisition of the inventory, and the amount that Plaintiff eventually recovered for the inventory upon resale.

6

1. Breach of Contract Claim for Items Sold Without Repayment

Defendants have stipulated that LMI is liable to Plaintiff for inventory that LMI sold without repaying Plaintiff as required under the Security Agreement, and have even stipulated to the amount of damages due on this claim. The Court finds that summary judgment in favor of Plaintiff is proper on this claim.

Under Florida law, the elements of a breach of contract claim are: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d Dist. Ct. App. 2006) (citations omitted). "[I]n order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." Id. The parties stipulate that they executed the Security Agreement on or about November 7, 2006, and the Guaranty Agreements in September 2001 and November 2006. (Facts, dkt # 49, ¶¶ g, i, j). This is sufficient to prove the existence of a contract.[4] The parties further stipulate that Plaintiffs made demands upon the Defendants for sums due under the Security Agreement for items of inventory that LMI sold without making payments to Plaintiff as required, and that those sums total $843,265.81. (Facts, dkt # 49, ¶¶ n, o). This is sufficient to prove the breach and damages elements. Lastly, Plaintiff performed its obligations under the Security Agreement by financing the acquisition of LMI's inventory. (Facts, dkt # 49, ¶ l). There is no genuine issue of material fact for trial on this claim, and summary judgment is accordingly granted in favor of Plaintiff in the amount of $843,286.81.

---

[4] Defendants do not challenge the validity of the Security Agreement or the Guaranty Agreements on grounds of unconscionability, illegality, or any other basis.

2. Repossession Costs

Summary judgment in favor of Plaintiff is also appropriate on its second claim, for repossession costs arising out of breach of the Security Agreement. As discussed above, the parties have stipulated to the existence and validity of the agreement and that LMI breached the agreement. It is likewise undisputed that Plaintiff incurred costs in the course of repossessing inventory from LMI, and that pursuant to the Security Agreement, LMI was obligated to pay the cost of "retaking, holding, preparing for sale, selling and the like" in the event of default on its obligations. (Security Agreement, dkt # 49-3, ¶ 11). Plaintiff has supplied the affidavit of its Vice President, Brent Layton, and expense reports from a towing company in support of its assertion that it incurred $25,489.50 in repossession costs. (Layton Affidavit, dkt # 62-2 ¶ 17). Defendants do not dispute that Plaintiff repossessed the LMI inventory, do not contest the accuracy of the repossession expense reports, and have not set out any specific facts to rebut Plaintiff's calculation of the damages due on this claim. There is no issue of material fact for trial with respect to Plaintiff's repossession cost claims, and summary judgment on this issue is accordingly granted in favor of Plaintiff in the amount of $25,489.50.

3. Interest

Summary judgment in favor of Plaintiff is appropriate on its claim for interest. Under the Security Agreement, LMI is obligated to pay interest and charges on inventory financed by Plaintiff. (Security Agreement, dkt # 49-3, ¶ 4(a)). Plaintiff has supplied an affidavit and expense report showing that Defendants are liable for, and have not repaid, $126,993.28 worth of interest. (Layton Affidavit, dkt # 62-2, ¶13; Plaintiff's Ex. 1). Defendants's Response does not dispute that Defendants owe interest under the Security

8

Agreement, and sets out no specific facts to rebut Plaintiff's calculation of the interest amount. There are no genuine issues of fact with respect to Plaintiff's interest claim, and summary judgment on that claim is accordingly granted in favor of Plaintiff in the amount of $126,993.28.

### 4. Attorneys' Fees

Summary judgment in favor of Plaintiff is appropriate on the Defendants' liability for attorneys' fees; however, the Court will withhold ruling upon the proper amount of the attorneys' fees sought until Plaintiff's counsel has completed its work in this matter. Under the Security Agreement, LMI is obligated to pay

> [A]ll other costs and expenses incurred by the Secured Party in connection with this Agreement, including but not limited to attorneys' fees and other legal expenses in connection with or arising out of any deficiency suit, collection actions or otherwise following an Event of Default.

(Security Agreement, dkt # 49-3, ¶ 4(a)). Plaintiff's counsel has submitted affidavits reflecting attorneys' fees, costs, and expenses incurred to date. (Affidavit of Costs, dkt # 62-5; Affidavit of Miscellaneous Litigation Expenses, dkt # 62-6; Affidavit of Time Spent, dkt # 62-7). Defendants' Response does not dispute that Defendants owe attorneys' fees under the Security Agreement.

There are no genuine issues of fact with respect to Defendants' liability for attorneys' fees, and summary judgment on that issue is granted in favor of Plaintiff. However, Plaintiff's Motion for Summary Judgment is denied without prejudice with respect to the amount of attorneys' fees and costs for which Defendants are liable. Upon the conclusion of its work on behalf of Plaintiff in this action, Plaintiff's counsel may submit detailed affidavits documenting the total amount of time spent working for

Plaintiff, and the total amount of attorneys' fees, expenses, and costs incurred. At that time, the Court will entertain a motion seeking an award of attorneys' fees and costs.

### 5. Deficiency

Summary judgment in favor of Plaintiff is proper on the issue of Defendants' liability for a deficiency payment under the Security Agreement. However, summary judgment is not warranted as to the issues of damages. There is insufficient information in the record to determine whether Plaintiff's dispositions were commercially reasonable, and to ascertain the amount of the deficiency.

It is undisputed that under Florida law and the terms of the Security Agreement, Defendants are liable to Plaintiff for any deficiency. § 679.608(d), Fla. Stat.; (Security Agreement, dkt # 49-3, ¶¶ 4(a), 11). It is also undisputed that LMI has defaulted on its obligations to Plaintiff under the Security Agreement, and the Parties agree on the standard for whether a secured party is entitled to a deficiency (which is discussed in detail below). However, Defendants, through their Response and the attached affidavit of Louis Lentine, seek to place in issue the commercial reasonableness of Plaintiff's dispositions,[5] which would shift the burden to Plaintiff to prove that its sales were in fact commercially reasonable or that the fair market value of the resold inventory was less than LMI's debt. Burley v. Gelco Corp., 976 So.2d 97, 101 (Fla. 5th Dist. Ct. App. 2008).

Under Article 9 of the Uniform Commercial Code, as codified in the Florida statute governing default on security obligations, a secured party may take possession of collateral after a default. § 679.609, Fla. Stat. The secured party then "may sell, lease,

---

[5] Defendants' Response asserts that the boats resold were "new . . . and could have been sold for at least the costs of the boats." Louis Lentine, on the basis of more than forty years of experience in the marine retail industry, makes the same claim in his affidavit. (Louis Lentine Affidavit, dkt # 70-2, ¶¶ 6-8).

10

license, or otherwise dispose of any or all of the collateral in its present condition or after following any commercially reasonable preparation or processing." § 679.610(1), Fla. Stat. "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." § 679.610(2), Fla. Stat. The rules governing commercial reasonableness are in place "to protect the debtor, because they help prevent the creditor from acquiring the collateral at less than its true value or unfairly understating its value so as to obtain an excessive deficiency judgment." Burley, 976 So. 2d. at 100 (citations omitted).

A defaulting party is liable for any deficiency remaining after the secured party disposes of collateral. § 679.608(d), Fla. Stat. To obtain the deficiency, the secured party must show that the disposition was commercially reasonable or that the fair market value of the collateral was less than the debt that the collateral secures. Burley, 976 So. 2d at 101. Where a debtor places in issue the commercial reasonableness of a secured party's disposition of collateral, the secured party bears the "burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part." § 679.626(2), Fla. Stat.; Burley, 976 So.2d at 100. Commercial reasonableness is defined in § 679.627(2), Florida Statutes:

> A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
> (a) In the usual manner on any recognized market;
> (b) At the price current in any recognized market at the time of the disposition; or
> (c) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Subsections (2)(a) and (2)(b) are irrelevant here, as the term "recognized market" applies "only to markets in which there are standardized price quotations for property that is

11

essentially fungible, such as stock exchanges." Burley, 976 So. 2d at 101 n.3 (quoting U.C.C. § 9-627 cmt. 4 (2002)).

Plaintiff asserts that it has recovered a portion of the cost of sixty-six items of LMI's inventory, either by selling them back to their manufacturers, or reselling them through two other local marine dealers, Treasure Coast and Legendary Marine. Fifty-one items remain to be resold. Plaintiff states that with respect to inventory that it resold through Treasure Coast and Legendary Marine, it has recovered an average of 77% of the total outstanding balance. Plaintiff estimates that it will recover a similar percentage when the remaining fifty-one items are resold. (Pl.'s Statement of Material Facts, dkt # 62, ¶¶ 43, 45). In light of the monies already recovered, and its estimated future recovery on the remaining inventory, Plaintiff estimates that the remaining deficiency owed by LMI totals $916,210.44.

Plaintiff argues that it need not make a showing as to commercial reasonableness, because Louis Lentine's affidavit is insufficient to place commercial reasonableness at issue. Louis Lentine's affidavit asserts, on the basis of his extensive experience in the marine retail industry that the boats resold were "new . . . and could have been sold for at least the cost of the boats." (Louis Lentine Affidavit, dkt # 70-2, ¶¶ 6-8). Under § 679.626, Florida Statutes commercial reasonableness need merely be "placed in issue" for the burden to shift to Plaintiff. A debtor need not affirmatively establish commercial unreasonableness, and Plaintiff cites no authority suggesting that Florida Statutes § 679.626 has been or should be interpreted to impose such a requirement.

In support of its argument, Plaintiff cites § 679.627(1), Florida Statutes. However, that provision states only that

> The fact that a greater amount could have been obtained by a disposition . . . at a different time or in a different method . . . is not of itself sufficient to preclude the secured party from establishing that the disposition . . . was made in a commercially reasonable manner.

§ 679.627(1), Florida Statutes. In other words, that provision relates to the standard for determining whether a secured party has proven commercial reasonableness, not whether a debtor has put it in issue in the first place. The burden shifts to Plaintiff to prove the commercial reasonableness of its disposition, or that the fair market value of the boats was less than LMI's debt.

Plaintiff has not met the burden of proving commercial reasonableness or fair market value. The Layton Affidavit states that twenty-eight inventory items were sold back to their manufacturers pursuant to contractual agreements, at a price supposedly higher than that currently available on the retail market. (Layton Affidvait, dkt # 62-2, ¶¶ 20-22). Plaintiff, however, provides no facts about these contracts, or how such contracts are generally formulated in the marine retail business, that would permit the Court to find that their contents or formulation are in conformity with reasonable commercial practices among dealers in the industry. Plaintiff has not submitted examples of these contracts, and Plaintiff's exhibits do not explain, for instance, how the re-purchase prices in the contracts were determined. Nor has Plaintiff submitted factual evidence, aside from the opinion of Mr. Layton, supporting its claim that the prices obtained by reselling to manufacturers are higher than those that could be obtained by reselling them by other means.

Plaintiff also submits affidavits from representatives of Treasure Coast and Legendary Marine, testifying on the basis of their experience in the marine retail industry

that they received fair market value for the items they resold. (Grane Affidavit, dkt # 62-3, ¶ 10; Pace Affidavit, 62-4, ¶ 6). But these affidavits suffer from a similar defect as Plaintiff's claims about the manufacturer repurchase agreements: they do not include specific factual information about the sales or about the current marine retail market that would permit the Court to find as a matter of law that the sales were in conformity with reasonable commercial practices among marine dealers, that every aspect of the sales were commercially reasonable, or that the resale prices represented fair market value. The affidavit of Fred Pace of Legendary Marine, for example, includes no information about the dispositions made through that business, other than the statement "Legendary Marine sells these boats and other items of inventory through its [four] dealership locations and also advertises this inventory on its website." (Pace Affidavit, dkt # 62-4, ¶ 6). Without further detail, this Court cannot conclude that the method, time, place, and manner of the dispositions were commercially reasonable.

  Plaintiff claims that it has submitted sufficient evidence to prove that every aspect of the dispositions were commercially reasonable, but its own Statement of Material Facts raises questions as to whether that is the case. In disposing of secured collateral, "[t]he importance of correct notice cannot be overstated. Notice is an integral aspect of whether the disposition is 'commercially reasonable' under chapter 679." Burley, 976 So.2d at 100 (internal citations and marks omitted). Whether the notice was adequate is a fact question, see id., and the current record simply does not provide the Court with enough facts to determine whether sufficient notice was provided. For example, Plaintiff's Statement of Material Facts, dkt # 62, ¶¶ 56-58 indicates that the notices it sent to Defendants informing them of the dispositions were returned undeliverable. Plaintiff

14

does not say whether it took further steps to notify Defendants of the disposition, such as serving notice upon Defendants' counsel. Genuine issues of fact therefore remain as to whether Defendants ever had proper notice of the dispositions before they took place.

Lastly, Plaintiff has not adequately supported its speculative claim that an average of 77% recovery is the best that can be achieved on the inventory that remains to be resold. Even if it were proper for the Court to make a determination about the deficiency remaining on these items before they have been sold, Plaintiff has supplied no factual evidence indicating why more than 77% recovery on the remaining items is unfeasible, other than that this is the average percentage recovery on resold items to date.

Plaintiff generally argues that Defendants' Response rests largely on the opinion of Louis Lentine, and is therefore inadequate to defeat Plaintiff's Motion for summary judgment. However, it is Plaintiff as the moving party here who bears the burden in the first instance of proving the absence of material issues of fact before the burden of rebuttal shifts to Defendants, Adickes, 398 U.S. at 157, and Florida law further burdens Plaintiff with proving commercial reasonableness. § 679.626, Florida Statutes. Based on the foregoing, summary judgment in favor of Plaintiff is granted as to Defendants' deficiency liability under the Security Agreement. However, because genuine issues of material fact remain as to whether the sales of repossessed inventory were commercially reasonable, whether the fair market value of the repossessed inventory was less than LMI's debt, and the correct amount of any existing deficiency, summary judgment with respect to those issues is denied.

6. The Lentines' Joint and Several Liability

Summary judgment in favor of Plaintiff is appropriate as to the joint and several liability of the Lentines. Under their respective Guaranty Agreements, the Lentines are each individually liable for the obligations of LMI in the event of default. (Guaranty Agreements, dkt #'s 49-4, 49-5, ¶1). The Guaranty Agreements are unconditional and irrevocable, and waive any right to require Plaintiff to first exhaust its remedies against LMI. (Guaranty Agreements, dkt #'s 49-4, 49-5, ¶4(a)). Defendants have stipulated to the validity of the Guaranty Agreements as submitted to the Court, and Defendants' Response does not dispute that Julie Lentine and Louis Lentine are each personally liable under their respective Guaranty Agreements, nor does it set out specific facts rebutting Plaintiff on this issue.

There are no genuine issues of fact with respect to the joint and several liability of Louis Lentine and Julie Lentine, and summary judgment on that issue is accordingly granted in favor of Plaintiff in the total amount awarded in this Order, plus the proper deficiency amount, if any, to be determined at trial, and the total amount of attorneys' fees and costs ultimately awarded.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Plaintiff Textron Financial Corporation's Motion for Partial Summary Judgment (dkt #60) is GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED on the issues of (1) inventory sold without repayment, in the amount of $843,266.81, (2) repossession costs, in the amount of

$25,489.50, (3) interest, in the amount of $126,993.28 and (4) the joint and several liability of Louis Lentine and Julie Lentine. It is further

ORDERED AND ADJUDGED that the Motion is GRANTED on the issue of Defendants' liability for Plaintiff's attorneys' fees, costs, and expenses, but DENIED WITHOUT PREJUDICE as to the total amount thereof to be awarded, pending a full accounting by Plaintiff's counsel at the conclusion of this matter. It is further

ORDERED AND ADJUDGED that the Motion is GRANTED on the issue of Defendants' liability for a deficiency under the Security Agreement, but DENIED as to the commercial reasonableness of Plaintiff's dispositions, the fair market value of the resold inventory, and the correct amount of the deficiency. This matter will proceed to trial on those issues alone.

DONE AND ORDERED in chambers at Miami, Florida, this 20th day of April, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record